[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JAN 21, 2010
JOHN LEY
ACTING CLERK

_____

No. 09-12638
Non-Argument Calendar

_____

D. C. Docket No. 08-20091-CR-JAL

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JASHER ARCHER-MCFIELD,
a.k.a. Fat Boy,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(January 21, 2010)

Before WILSON, PRYOR and FAY, Circuit Judges.

PER CURIAM:

Jasher Archer-McField appeals his convictions for attempting to import and

to possess with the intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), 846, 952(a), 960(b)(2)(B), 963; 18 U.S.C. § 2, and laundering money, id. §§ 2, 1956(a)(2)(A). Archer-McField challenges the sufficiency of the evidence to support his convictions and the admission of hearsay evidence. We affirm.

## I. BACKGROUND

In 2007, agents of the Immigration and Customs Enforcement Agency investigated an operation to transport cocaine from Honduras to Port Everglades, Florida. The agents discovered that Anthony Campbell was a member of the operation and obtained a warrant to tap his cellular telephone. Agents intercepted calls between Campbell and other members of the organization and heard conversations about cocaine to be imported on a ship called the M/V Caribe Isle and payment to be delivered by wire and courier.

On September 25, 2007, Agent Colin Jackson intercepted telephone calls between Campbell and Franklin Bodden about how to transport money that was "too much . . . to wire" and Campbell later instructed Bodden to "[b]reak this book down as small as possible." Jackson understood that Bodden would smuggle a large quantity of cash into Honduras, and Jackson established surveillance on Bodden's residence. That same day, Campbell called Dewey, a drug dealer in

Roatan, and discussed purchasing kilos of cocaine.

On September 27, 2007, Agent Jackson intercepted a conversation in which Campbell told Dewey that Bodden had cleared security and was en route to Roatan and Dewey agreed to meet Bodden. Campbell and Dewey discussed that Bodden would deliver $28,000 and Campbell said the "receipt that I sent down to you, that's . . . . to do what we need to do," which Jackson understood to mean the money "was to be used for Dewey to purchase narcotics." The next day, Dewey told Campbell that he had met Bodden and "[e]verything [was] everything now."

On September 30 and October 1, 2007, Agent Jackson intercepted conversations between Campbell and Archer-McField about an impending delivery of cocaine on the M/V Caribe Isle. Jackson had heard Campbell refer to Archer-McField as "Fat Boy" and brag that "Fat Boy" was "the best we have going anywhere because he really helps us." Jackson later observed a meeting between Archer-McField and Campbell.

On October 1, 2007, Campbell arranged to meet Archer-McField in the parking lot of a gas station to collect $3490 to pay Eddie Hamilton for smuggling cocaine on the M/V Caribe Isle. Later that day, Campbell called Archer-McField to discuss whether Hamilton would deliver one or two kilograms of cocaine, and Archer-McField explained he was uncertain of the quantity because he had not

3

"talk[ed] to those people down there yet." That evening, Campbell asked Archer-McField to bring him the shipment of cocaine, and Campbell stated he could not "leave these little cockroaches[, his distributors,] hungry, man." Campbell sought assurances from Archer-McField that he was not "taking [Campbell's] . . . cucarachas," his cocaine, to other distributors, who could "feed[] and let them fe[e]d sombody else."

That evening, Agent Jackson watched Archer-McField leave the Hyde Shipping yard at Port Everglades in possession of a cardboard box. Undercover agents stopped Archer-McField, covered his face, and searched the car in a manner to leave doubt whether the agents were law enforcement officers or imposters engaged in a robbery. The agents seized from the cardboard box two kilograms of cocaine packed between frozen fish and $3490 from the passenger compartment and released Archer-McField. Forensic testing established that the agents had seized 2.018 kilograms of cocaine hydrochloride. The next day, Archer-McField told Campbell about the "robbery," and on October 8, 2007, Agent Jackson observed a meeting between the two men.

On November 1, 2007, Dewey told Campbell that Hamilton would deliver another load of cocaine aboard the M/V Caribe Isle. Campbell instructed Dewey that he wanted the cocaine "without seasoning" or without concealing the drugs.

4

Campbell called Archer-McField and told him how the cocaine would be packaged. Based on several conversations between Campbell, Dewey, and Hamilton, Agent Jackson determined when the delivery would occur. Hamilton told Campbell that "[t]he children, them in school," meaning the cocaine had been placed on the ship, and Campbell instructed Hamilton to deliver the cocaine to Archer-McField or one of his associates.

After the M/V Caribe Isle docked on November 5, 2007, agents boarded and searched the ship, but they did not find any cocaine. Agent Jackson questioned Hamilton about his cellular telephone and, after Hamilton "became evasive," Jackson scrolled the call log and discovered Hamilton had spoken to Campbell. The agents left the ship, but maintained surveillance in the area. In the meantime, Archer-McField called Campbell to report intermittently the agents' activities. Archer-McField told Campbell he was concerned about possible surveillance and reported he could not collect the drugs. Campbell later called Dewey and told him to prepare for a return of the cocaine.

On November 6, 2007, a midshipman on the M/V Caribe Isle found in the bosun storeroom two packages of white powder that had been concealed in a tarp. The crew member reported his discovery to Captain Whitman Gentle, who examined the packages and recognized that the substance was cocaine. The

captain secreted the packages to a secure location and questioned the crew about the drugs. Hamilton claimed the cocaine, and the captain later poured the substance into the ocean.

Archer-McField, Campbell, Hamilton, and Bodden were charged in a nine-count indictment for their participation in the conspiracy. Archer-McField was charged with seven crimes: conspiracy to import cocaine and to possess with the intent to distribute 5 kilograms or more of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, 952(a), 960(b)(1)(B), 963; importation of cocaine and possession with the intent to distribute cocaine on October 1, 2007, id. §§ 841(a)(1), 841(b)(1)(B), 952(a), 960(b)(2); 18 U.S.C. § 2; attempting to import and to possess with the intent to distribute cocaine on November 5, 2007, id.; 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(ii), 846, 952(a), 960(b)(2)(B), 963; and laundering money on September 27, 2007, 18 U.S.C. §§ 2, 1956(a)(2)(A). In August 2008, the district court declared Hamilton a fugitive. Later, Campbell pleaded guilty to conspiring to import five kilograms or more of cocaine, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and laundering money, 18 U.S.C. §§ 1956(a)(2)(A), (h), and Bodden pleaded guilty to laundering money on September 27, 2007, 18 U.S.C. §§ 2, 1956(a)(2)(A).

At trial, Agent Jackson testified about his investigation of the drug

operation, conversations between the conspirators, and the discovery of drug evidence. Captain Gentle testified about the discovery of cocaine onboard the M/V Caribe Isle and he acknowledged that a crew member had admitted smuggling the cocaine.

Archer-McField objected and argued that Captain Gentle's testimony about the admission of the crew member was hearsay. The government argued that the testimony explained later actions by the captain and was a "statement by Eddie Hamilton against his interests." The district court found that Hamilton was unavailable and the testimony was admissible. Archer-McField argued the testimony was inadmissible because the testimony violated his right to confront Hamilton whom Captain Gentle had released and made unavailable for trial.

Captain Gentle acknowledged that he had a conversation with Hamilton, after which Hamilton led Gentle to the bosun storeroom and began to search the tarp. Gentle testified that, when Hamilton realized his search was fruitless, they left the storeroom. Gentle explained that he had fired Hamilton "on arrival to Roatan" because he had "plant[ed] drugs onboard the ship," Gentle told his superiors about the incident, and he disposed of the cocaine at sea.

When the government rested its case, Archer-McField moved for a judgment of acquittal on three charges. Archer-McField argued that the government failed to

7

prove he had attempted to import and to possess with the intent to distribute cocaine on November 5, 2007, because there was no evidence that Archer-McField "had some idea of the anticipated weight of the substance involved." Archer-McField also argued that the government had failed to connect him to laundering $28,000 on September 27, 2007. The government responded that, under Pinkerton v. United States, 328 U.S. 640, 66 S. Ct. 1180 (1946), Archer-McField was liable for the money laundering of his coconspirators. The court denied Archer-McField's motion.

The jury found Archer-McField guilty of all seven charges. The district court sentenced Archer-McField to seven concurrent terms of 121 months of imprisonment.

## II. STANDARDS OF REVIEW

We review de novo the denial of a judgment of acquittal, and we construe the evidence in the light most favorable to the government. United States v. Demarest, 570 F.3d 1232, 1239 (11th Cir. 2009). When the defendant fails to present to the district court his specific arguments about the sufficiency of the evidence, we review them for plain error. Id. at 1241. We review evidentiary rulings for abuse of discretion. United States v. US Infrastructure, Inc., 576 F.3d 1195, 1208 (11th Cir. 2009).

## III. DISCUSSION

Archer-McField presents three issues for our consideration. First, Archer-McField argues for the first time on appeal that his convictions for attempting to import and to possess with the intent to distribute cocaine are based on his mere presence at the shipyard. Second, Archer-McField argues that the government failed to prove he knew that $28,000 was being laundered on September 27, 2007, or that the transaction was a forseeable act of his coconspirators. Third, Archer-McField argues that the district court erroneously admitted hearsay statements of Hamilton without proof that Hamilton was unavailable or that his statement was reliable. These arguments fail.

Ample evidence supports Archer-McField's convictions for attempting to import and possess with the intent to distribute cocaine. Evidence established that on November 5, 2007, Archer-McField, acting at Campbell's instruction, planned to meet Hamilton at the Hyde Shipping yard and accept a delivery of cocaine that Hamilton had smuggled from Honduras, but federal agents thwarted Archer-McField's plan. Captain Gentle later discovered cocaine on board the M/V Caribe Isle. The district court did not err, plainly or otherwise, by denying Archer-McField's motion for a judgment of acquittal of the cocaine charges.

Ample evidence also supports Archer-McField's conviction for laundering

money. Testimony established that Archer-McField was entrusted with transporting both cocaine and money among coconspirators, and the jury found that Archer-McField had conspired to import and to possess with the intent to distribute 5 kilograms or more of cocaine. The conspiracy involved importing cocaine from Honduras and necessarily required payment for those drugs using illicit methods to conceal the transactions. See United States v. Alvarez, 755 F.2d 830, 850–51 (11th Cir. 1985). Based on Archer-McField's role in the conspiracy, it was reasonably foreseeable that his coconspirators would launder money on September 27, 2007, in furtherance of the conspiracy to traffic in cocaine. The district court did not err by denying Archer-McField's motion for an acquittal on the laundering offense.

Archer-McField argues that the testimony of Captain Gentle that Hamilton "admit[ted] putting the drugs on the ship" constituted hearsay, but we disagree. A review of the testimony establishes that the statement was offered, not to prove its truth, but to explain how Captain Gentle had investigated the incident and had reported his findings to his superiors. See United States v. Jiminez, 564 F.3d 1280, 1287 (11th Cir. 2009). Even if we were to find that the statements constituted hearsay, they were admissible as a declaration against interest under Federal Rule of Evidence 804(b)(3). The district court had declared Hamilton a fugitive and was

10

entitled to find that he was unavailable for trial.  United States v. Curbello, 940 F.2d 1503, 1507 (11th Cir. 1991).  Hamilton claimed the cocaine and, based on the inevitable consequences of his admission, he must have "believ[ed] it to be true." Fed. R. Evid. 804(b)(4).  Evidence that Campbell and Hamilton discussed the timing of the delivery, Hamilton told Campbell he had stored the cocaine on the ship, Campbell alerted Dewey that the cocaine was being returned, and cocaine was discovered onboard all corroborated Hamilton's admission.  The district court did not abuse its discretion by admitting the evidence.

## IV. CONCLUSION

Archer-McField's convictions are **AFFIRMED**.